# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| U.S. FUTURES EXCHANGE, LLC and U.S. EXCHANGE HOLDINGS, INC., <br><br> Plaintiffs, <br><br> v. <br><br> BOARD OF TRADE OF THE CITY OF CHICAGO and CHICAGO MERCANTILE EXCHANGE, <br><br> Defendants. | No. 04 C 6756 <br> Judge James B. Zagel |

## MEMORANDUM OPINION AND ORDER

This lawsuit arises out of the Plaintiffs' (US. Futures Exchange, LLC and U.S. Exchange Holdings, Inc.) attempts to launch a registered futures and options exchange that would compete directly with Defendant Chicago Board of Trade. Plaintiffs allege that the Chicago Board of Trade, aided by Defendant Chicago Mercantile Exchange, engaged in anticompetitive conduct in order to block Plaintiffs' entry into the futures and options exchange market. According to Plaintiffs, the anticompetitive tactics included predatory pricing, denying Plaintiffs access to potential customers, threatening traders who considered doing business with Plaintiffs, and launching a campaign, based on intentional misrepresentations, designed to sow doubt in the minds of traders (and others) about the viability of Plaintiffs' exchange.

Defendants now move to dismiss the Complaint pursuant to Fed. R. Civ. P. 12(b)(6). A motion to dismiss under Rule 12(b)(6) is proper where it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). In reviewing a motion to dismiss, the court must construe all

allegations in the complaint in the light most favorable to the plaintiff and accept all well-pleaded facts and allegations as true. *Bontkowski v. First Nat'l Bank*, 998 F.2d 459, 461 (7th Cir. 1993).

Before reviewing the substance of Defendants' motion, I note that Defendants' description of Plaintiffs' Second Amended Complaint ("Complaint") bears so little resemblance to the Complaint itself that I paused to consider whether Defendants have actually read the Complaint. Assuming that they have, the characterizations made in Defendants' briefs are as close to the border of being misrepresentations to this Court as it is possible to come without crossing it.

Defendants claim that Plaintiffs' antitrust claims are barred by *Noerr-Pennington*. The *Noerr-Pennington* doctrine provides that "those who petition government for redress are generally immune from antitrust liability." *Prof'l Real Estate Investors, Inc. v. Columbia Pictures Indus.,* 508 U.S. 49, 56 (1993). Such immunity is limited to efforts "directed toward obtaining governmental action." *E.R.R. Presidents Conference v. Noerr Motor Freight, Inc.,* 365 U.S. 127, 140 (1961). Much of the exclusionary conduct alleged in Plaintiffs' Complaint has nothing to do with Defendants' petitioning activities and is not subject to *Noerr-Pennington*. These activities include alleged efforts aimed at preventing Plaintiffs from obtaining clearing services from the Clearing Corporation ("CCorp") (Pls.' Compl. ¶¶ 40-41), efforts to interfere with Plaintiffs' regulatory services agreement with the National Futures Association ("NFA") (Pls.' Compl. ¶ 44), the making of false statements to the press, potential customers, and the financial community (Pls.' Compl. ¶ 46), and predatory pricing (Pls.' Compl. ¶ 51).

The remaining conduct alleged by Plaintiffs falls within the sham and intentional misrepresentation exceptions to *Noerr-Pennington*.[1] The sham exception "encompasses situations in which persons use the governmental process – as opposed to the outcome of that process – as an anticompetitive weapon." *Columbia v. Omni Outdoor Advert., Inc.,* 499 U.S. 365, 380 (1991). The Complaint alleges that the purpose of the Defendants' statements to Congress and the Commodities Futures Trading Commission ("CFTC") was "to abuse the governmental process, to create public doubt about the feasibility of [Plaintiff]'s market entry, and thereby to suppress [Plaintiff]'s efforts to compete in the relevant markets. (Pls.' Compl. ¶ 48).

The misrepresentation exception applies to material misrepresentations made during an adjudicatory proceeding. *See e.g. Kottle v. Northwest Kidney Ctrs.,* 146 F.3d 1056, 1063 (9th Cir. 1998); *Whelan v. Abell,* 48 F.3d 1247, 1255 (D.C. Cir. 1995); *St. Joseph's Hosp., Inc. v. Hosp. Corp. of Am.,* 795 F.2d 948, 955 (11th Cir. 1986). In paragraphs 45-47 of the Complaint, Plaintiffs allege numerous material misstatements that may fall under this exception. Defendants argue that even if the misrepresentation exception was properly pled, it would not apply because the proceedings before the CFTC were not adjudicatory in nature.[2] However, since it is possible, when viewing the allegations in the light most favorable to the Plaintiffs, that the proceedings

---

[1] Defendants' assertions that Plaintiffs have failed to allege these exceptions are utterly without merit.

[2] In addition, Defendants claim that the heightened pleading standards of Fed. R. Civ. P. 9(b) apply to allegations of material misrepresentations. Plaintiffs argue that Rule 9(b) is not applicable since allegations of misrepresentation are treated differently from allegations concerning fraud. *See United States v. Northern Trust Co.,* 372 F.3d 886 (7th Cir. 2004). Because Plaintiffs' allegations would meet even the heightened standards of Rule 9(b), I need not decide that issue here.

could be considered as adjudicatory, it would not be proper for me to dismiss Plaintiffs allegations at this time.

Defendants next argue that Plaintiffs' antitrust claims based on the creation and implementation of the CME/CBOT Clearing Link are untenable because Defendants are shielded from liability under the implied immunity doctrine. As a general matter, there are two variants of implied immunity:

> The first arises when a federal regulatory scheme is so pervasive that agency initiative or full deliberation controls every aspect of the defendant's behavior...The second variant is more narrow in scope, and focuses on the extent to which an administrative agency has actually exercised its supervisory powers over the particular practices at issue.

*Am. Agric. Movement v. Bd. of Trade,* 977 F.2d 1147, 1158 (7th Cir. 1992). The Defendants appear to rely on the second variant – the supervisory power exerted by the CFTC over the establishment of the CME/CBOT Clearing Link. Since any determination of the level of supervisory power exerted is an issue of fact, it cannot be properly decided here.

Finally, Defendants argue that Plaintiffs have not properly alleged their claim for tortious interference with a prospective business advantage. Defendants claim that Plaintiffs have failed to allege interference with "specified business relationships with particular third parties." (Defs.' Mem. p. 19). This is simply not true. The Complaint alleges that Defendants interfered in their contractual dealings with CCorp, the NFA, and potential customers. Defendants also argue that the tort claim should be dismissed because it relies on conduct that is immune under *Noerr-Pennington*. However, the acts forming the basis of this claim – interference with Plaintiffs' relationships with CCorp, the NFA, and potential customers – were not directed at petitioning a government body and are, therefore, not subject to *Noerr-Pennington.*

For these reasons, Defendants' Motion to Dismiss is DENIED.

ENTER:

*James B. Zagel*

James B. Zagel
United States District Judge

DATE: August 22, 2005