**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| U.S. FUTURES EXCHANGE, L.L.C., and U.S. EXCHANGE HOLDINGS, INC., <br><br> Plaintiffs, <br><br> v. <br><br> BOARD OF TRADE OF THE CITY OF CHICAGO, INC., and CHICAGO MERCANTILE EXCHANGE, INC., <br><br> Defendants. | No. 04 C 6756 <br> Judge James B. Zagel |

**MEMORANDUM OPINION AND ORDER**

**I. OVERVIEW**

Plaintiffs U.S. Futures Exchange, L.L.C., ("USFE") and U.S. Exchange Holdings, Inc. ("U.S. Holdings") filed their Second Amended Complaint alleging violations of U.S. antitrust laws. Counts one and two of Plaintiffs' complaint allege that Defendants violated the Sherman Act, 15 U.S.C. § 2, by monopolizing, and conspiring to monopolize, the market for exchange services for U.S. Treasury futures and options on U.S. Treasury futures. Specifically, the Second Amended Complaint alleges that "beginning prior to USFE's planned launch in February 2004 and continuing to the date of this complaint [] CBOT has engaged in unlawful predatory pricing in the fees charged to trade" Treasury derivatives. Defendants Board of Trade of the City of Chicago ("CBOT") and the Chicago Mercantile Exchange Inc. ("CME") now move for summary judgment on the narrow issue of predatory pricing. For the following reasons, Defendants' motion for summary judgment is granted.

**II. STATEMENT OF FACTS**

Plaintiffs have not responded to Defendants' statement of material facts in accordance with Local Rule 56.1.[1] Because Plaintiffs have failed to comply with Local Rule 56.1, Defendants' statement of facts in support of the predatory pricing motion is deemed admitted for purposes of this motion only. *Smith v. Lamz*, 321 F.3d 680, 684 (7th Cir. 2003) (citing *Michas v. Health Cost Controls of Ill., Inc.*, 209 F.3d 687, 684 (7th Cir. 2000).

CBOT and CME are futures and futures-options exchanges. USFE is a subsidiary of Plaintiff U.S. Holdings, which is a wholly owned subsidiary of Eurex Frankfurt A.G. ("Eurex"). On January 10, 2003 Eurex announced its intention to launch a U.S.-based futures and options exchange. On February 3, 2004, in reaction to Eurex's entry into the U.S. Treasury derivatives market, CBOT announced a reduction in certain fees it charged to customers for U.S. Treasury derivatives trading. This reduction included a waiver of trading fees, but not clearing fees, to some customers, and a reduction in trading fees to others. The reduction impacted only exchange transaction fees, one component of the total price CBOT charges customers to execute trade, and applied only to Treasuries traded electronically, not to those traded on CBOT's open-outcry trading floor.

CBOT's Treasury derivative business has very few variable costs. Most of CBOT's costs come from exchange-wide expenses such as management expenses, building maintenance, and technology expenses relating to the trading system as a whole. Volume-dependent costs are essentially limited to clearing expenses. Other volume-related costs include licensing fees and

---

[1] Plaintiffs instead indicated in a footnote that they deny certain facts asserted in Defendants' statement of facts, and would file an opposing statement if the Court desired.

market-maker expenses. Low variable costs are not unique to CBOT and Eurex's U.S. exchange also experienced low variable cost.

In support of this motion, CBOT offers the expert declaration of Professor Janusz A. Ordover ("Ordover"). Ordover concluded that CBOT Treasury revenues from exchange fees and clearing fees have been above its average variable costs at all relevant times. Furthermore, in every quarter from 2004 through 2006, the revenue from CBOT's Treasury business has been considerably greater than its variable cost, producing an average of more than $48 million in contribution margin (the excess of revenue over variable cost) per quarter. Ordover observed that CBOT's financial statements reflect expenditures for information technology services ("ITS") that appear to vary by volume; however, CBOT's Director of Finance, Jack Tobin, identified those costs as non-variable. Ordover concluded that, even when the increases in the ITS costs are included as a variable expense, CBOT's revenues still exceeded its costs by more than an average of $45 million in contribution margin per quarter.

In October of 2004, after Plaintiffs filed their complaint alleging that CBOT's fee reductions were predatory, CBOT's parent company Eurex extended its fee reduction for trading its Dow Jones Italy Titans 30 Index futures and options, which are traded in the United States and in Europe. Eurex conducted its own analysis of CBOT's finances during the fee reduction period, and determined that the price cut was sustainable for the "long term." Ordover also examined exchange-wide revenues and costs, and concluded that CBOT's prices were above its long-run incremental costs.

**III. STANDARD OF REVIEW**

Summary judgment should be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A genuine issue of triable fact exists only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Pugh v. City of Attica, Ind.*, 259 F.3d 619, 625 (7th Cir. 2001) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

Once the moving party has set forth the basis for summary judgment, the burden then shifts to the nonmoving party who must go beyond mere allegations and offer specific facts showing that there is a genuine issue for trial. Fed. R. Civ. P. 56(e); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). The nonmoving party must offer more than "[c]onclusory allegations, unsupported by specific facts" in order to establish a genuine issue of material fact. *Payne v. Pauley*, 337 F.3d 767, 773 (7th Cir. 2003) (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990)). A party will be successful in opposing summary judgment only if it presents "definite, competent evidence to rebut the motion." *EEOC v. Sears, Roebuck & Co.*, 233 F.3d 432, 437 (7th Cir. 2000). I consider the record in the light most favorable to the nonmoving party, and draw all reasonable inferences in the nonmovant's favor. *Lesch v. Crown Cork & Seal Co.*, 282 F.3d 467, 471 (7th Cir. 2002). I will accept the nonmoving party's version of any disputed fact only if it is supported by relevant, admissible evidence. *Bombard v. Fort Wayne Newspapers, Inc.*, 92 F.3d 560, 562 (7th Cir. 1996).

## IV. DISCUSSION

With respect to this motion for summary judgment, Plaintiffs note that they "will not attempt to establish at trial that CBOT's pricing fits the narrow definition of "predatory pricing" set forth in the Supreme Court's *Brooke Group* decision and are prepared to enter into an appropriate stipulation." In accordance with this stipulation, Plaintiffs have further proposed to voluntarily dismiss its predatory pricing claims. Defendants rejected Plaintiffs' proposed stipulation stating that it "is no substitution for a ruling."

Section 2 of the Sherman Act states that a firm shall not "monopolize, or attempt to monopolize[] any part of the trade or commerce among the several States, or with foreign nations." 15 U.S. C. § 2. To establish a violation, a plaintiff must show that a defendant: (1) wilfully acquired or maintained monopoly power in the relevant market though anticompetitive or exclusionary conduct, and (2) willfully acquired and maintained "that power as distinguished from growth or development as a consequence of a superior product, business acumen, or historic accident." *Verizon Commc'ns, Inc.v. Law Offices of Curtis v. Trinko LLP*, 540 U.S. 398, 407 (2004) (quoting *United States v. Grinnell Corp.,* 384 U.S. 563, 570-571(1966).

Plaintiffs allege that CBOT engaged in the anti-competitive conduct of predatory pricing. To demonstrate that CBOT's prices were predatory, Plaintiffs must show that CBOT's reduced fees were below its costs and that CBOT had "a reasonable prospect [] or dangerous probability [] of recouping its investment in below-cost pricing." *Brooke Group, Ltd. v. Brown & Williamson Tobacco Co.*, 509 U.S. 209, 223-24 (1993). It is insufficient to merely show that a defendant lowered prices, even if price-cutting inflicts losses on its rivals. *Id*. at 320. "[T]he

5

antitrust laws were passed for 'the protection of *competition*, not *competitors*.'" *Id*. at 224 (emphasis original) (citing *Brown Shoe Co. v. United States*, 370 U.S. 294, 320 (1962)).

CBOT has put forth uncontested facts to show that its prices for U.S. Treasury derivative exchange services exceeded its average variable cost. Furthermore, not only did CBOT's prices exceed its average variable cost, but also its average total cost. Accordingly, I find that Defendants' pricing was above every measure of cost appropriate for a predatory pricing analysis and grant Defendants' motion for summary judgment on the issue of predatory pricing.

Granting summary judgment as to the issue of predatory pricing, however, does not warrant the dismissal of Counts I and II. In the Second Amended Complaint, Plaintiffs have alleged that Defendants participated in other conduct, such as denying access to customers and threatening traders, that could constitute exclusionary and anticompetitive conduct and violate Section 2 of the Sherman Act.

**V. CONCLUSION**

For the foregoing reasons, Defendants' motion for summary judgment on the issue of predatory pricing is granted.

ENTER:

James B. Zagel
United States District Judge

DATE: July 2, 2010