# Exhibit C

1

```
                THE UNITED STATES DISTRICT COURT
                   NORTHERN DISTRICT OF ILLINOIS
                         EASTERN DIVISION

U.S. FUTURES EXCHANGE, L.L.C., and   )
U.S. EXCHANGE HOLDINGS, INC.,        )
                                     ) No. 04 CV 6756
                                     )
         Plaintiffs,                 )
                                     )
vs.                                  )   Chicago, Illinois
                                     )
BOARD OF TRADE OF THE CITY           )
OF CHICAGO, INC., and CHICAGO        )
MERCANTILE EXCHANGE, INC.,           )   January 23, 2007
                                     )
         Defendants.                 )   11:51 o'clock a.m.
```

TRANSCRIPT OF PROCEEDINGS
BEFORE THE HONORABLE JAMES B. ZAGEL

For the Plaintiffs:

    MORGAN, LEWIS & BOCKINS
    BY:  William P. Quinn
         David W. Marston
         John H. Shenefield
         Thomas Scrivens
    1111 Pennsylvania Avenue, NW
    Washington D.C. 20004

For the Defendant Chicago Board of Trade:

    BELL, BOYD & LLOYD
    BY:  Kevin Michael Forde
         Paula W. Render
         Kevin R. Malloy
         Michael Sennett
    70 West Madison Street
    Suite 3100
    Chicago, Illinois 60602

Court Reporter:
         Blanca I. Lara, CRR, RPR
         219 South Dearborn Street
            Room 2318
         Chicago, Illinois 60604
           (312) 435-5895

```
 1
 2   APPEARANCES (continued:)
 3
 4
     For the Defendant Chicago Mercantile Exchange:
 5
                 FREEMAN, FREEMAN & SALZMAN, P.C.
 6           BY: Jerrold E. Salzman
                 Lee A. Freeman, Jr.
 7               John F. Kinney
                 Joseph Paul Adamczyk
 8           401 North Michigan Avenue
             Suite 3200
 9           Chicago, Illinois 60611
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

11:51AM

| | | |
|---|---|---|
| 12:21PM | 1 | regulations. CFTC has 180 days to approve a new market |
| 12:21PM | 2 | application. They did it in a month and a half shorter than |
| 12:21PM | 3 | that, your Honor. So they were up and approved within four |
| 12:21PM | 4 | days of their proposed start date. |
| 12:21PM | 5 | So then the question is, "well, the |
| 12:21PM | 6 | misrepresentations and all this other misconduct that we |
| 12:21PM | 7 | allege may not have slowed us down significantly, but there |
| 12:21PM | 8 | were customers who were not ready to start at the time we |
| 12:21PM | 9 | started, and, therefore, our entire enterprise failed, that's |
| 12:21PM | 10 | our anti-trust case." |
| 12:21PM | 11 | Okay. So, your Honor, in order to credit Plaintiffs' |
| 12:21PM | 12 | claim that it failed to generate a customer base because of |
| 12:21PM | 13 | our efforts in Congress and at the CFTC, what do we have to |
| 12:22PM | 14 | imagine? We have to imagine that when the CME and CBOT |
| 12:22PM | 15 | responded negatively to a CFTC request for comment and to a |
| 12:22PM | 16 | congressional request for testimony, when we did that, and we |
| 12:22PM | 17 | testified that there were serious problems with the contents |
| 12:22PM | 18 | of the application, that some significant number of highly |
| 12:22PM | 19 | sophisticated financial service firms and big-time speculators |
| 12:22PM | 20 | behaved in a very strange way, your Honor. Objections are |
| 12:22PM | 21 | made to an application filed by USFE, City Bank, Deutsche |
| 12:22PM | 22 | Bank, REFCO, Mann, all the big financial firms in this |
| 12:22PM | 23 | country, collectively throw up their hands and you hear them |
| 12:22PM | 24 | muttering like Captain Renault in Casablanca, "I'm shocked, |
| 12:23PM | 25 | shocked to find that there's gambling going on in this |

| | | |
|---|---|---|
| 12:23PM | 1 | establishment." I mean, what did anybody expect when comments |
| 12:23PM | 2 | were requested and when everybody knew that we had objections? |
| 12:23PM | 3 | Okay, we're not going to defend the comments. We |
| 12:23PM | 4 | don't have to defend whether they are or aren't |
| 12:23PM | 5 | misrepresentations. Although, if you look at our slides, your |
| 12:23PM | 6 | Honor, and if you'll look at, I guess it's slide 30, you'll |
| 12:23PM | 7 | see that none of these things are misrepresentation and no |
| 12:23PM | 8 | case can be made. But passing that, the question is, what |
| 12:23PM | 9 | significant potential customer of this exchange failed to sign |
| 12:23PM | 10 | up and/or failed to trade because of something that was said |
| 12:23PM | 11 | in Congress or to the CFTC by the CME. |
| 12:23PM | 12 | So far we've been trying for years to get the names |
| 12:23PM | 13 | and identities of those customers. We know, because of one |
| 12:23PM | 14 | random document that came to us, that the plaintiffs keep a |
| 12:24PM | 15 | record of everybody who traded every month and have the names |
| 12:24PM | 16 | of everybody who was on their exchange. So far we've only got |
| 12:24PM | 17 | one month of that information in their production, your Honor. |
| 12:24PM | 18 | We also know that they called on customers all over and they |
| 12:24PM | 19 | know who did or who didn't sign up. They haven't given us the |
| 12:24PM | 20 | names. |
| 12:24PM | 21 | Remember the time line. They could not open before |
| 12:24PM | 22 | February 1, 2004. They were approved on February 4, |
| 12:24PM | 23 | generously in advance of the 180-day limit. They chose not to |
| 12:24PM | 24 | open until the following Sunday night, which makes sense from |
| 12:24PM | 25 | a financial thing, ordinarily you open these markets on a |

| | | |
|---|---|---|
| 12:24PM | 1 | Sunday night. So February 8th, 2004. The complaint was filed |
| 12:24PM | 2 | in 2003. Who are the people who did not sign up who represent |
| 12:24PM | 3 | any significant portion of this market? Give us their names. |
| 12:25PM | 4 | Bring in an affidavit saying that. If necessary, give us ten, |
| 12:25PM | 5 | twenty days to take their depositions and see if we can shoot |
| 12:25PM | 6 | holes in it. |
| 12:25PM | 7 | If we can't shoot holes in it, and if they have a |
| 12:25PM | 8 | substantial portion of the market that was foreclosed through |
| 12:25PM | 9 | our action, this looks like a real case and we're going to |
| 12:25PM | 10 | move forward. But if based on the answers they've given so |
| 12:25PM | 11 | far, and the information in their documents that we've seen so |
| 12:25PM | 12 | far, and their public admissions which are in the documents |
| 12:25PM | 13 | we've given to you, in that slide set we've given you, there |
| 12:25PM | 14 | are no such people, then, your Honor, we've been wasting our |
| 12:25PM | 15 | time for 3 years, we've been wasting our money for 3 years, |
| 12:25PM | 16 | and we're going to continue doing that for the next 2 years at |
| 12:25PM | 17 | an even more rapid pace and at an even more expensive pace. |
| 12:25PM | 18 | So we've got a suggestion and I think it's |
| 12:25PM | 19 | straightforward. We're going to ask leave from your Honor to |
| 12:26PM | 20 | file a motion for summary judgment. The motion for summary |
| 12:26PM | 21 | judgment will essentially be in terms that I've just stated to |
| 12:26PM | 22 | you and with the documents and admissions in the document |
| 12:26PM | 23 | we've given to you. We'll do that quickly, your Honor. I |
| 12:26PM | 24 | think 30 days, John thinks 45 days, but quickly, whatever is |
| 12:26PM | 25 | to your liking. We ask the plaintiffs to respond within |

| | | |
|---|---|---|
| 12:26PM | 1 | 30 days of completing their discovering of CBOT on costs. We |
| 12:26PM | 2 | expect that their response would include affidavits refuting |
| 12:26PM | 3 | our statement that there are no significant group of customers |
| 12:26PM | 4 | who were turned away from their market because of anything we |
| 12:26PM | 5 | said or did. |
| 12:26PM | 6 | The reason I have so much confidence about this, your |
| 12:26PM | 7 | Honor, is because when we asked them these questions, they |
| 12:26PM | 8 | responded with 3 names, and of those 3 names they, first of |
| 12:27PM | 9 | all, didn't say that either CME or CBT had done anything to |
| 12:27PM | 10 | those 3 people. They just mentioned 3 names who didn't use |
| 12:27PM | 11 | that market. Of those 3 names, one wasn't a trader, it was a |
| 12:27PM | 12 | vendor of some sort; another was a trader, and we believe we |
| 12:27PM | 13 | found from their own documents that he was, in fact, using |
| 12:27PM | 14 | their market; and the third was a firm that didn't trade at |
| 12:27PM | 15 | all but just represented customers, and we've got two quotes |
| 12:27PM | 16 | from that firm, Rand Financial, in the slides we gave you |
| 12:27PM | 17 | explaining, the president of Rand Financial saying why he |
| 12:27PM | 18 | didn't use that market and it certainly had nothing to do with |
| 12:27PM | 19 | us. |
| 12:27PM | 20 | We also have a ton of documents in there from their |
| 12:27PM | 21 | own people explaining why they failed, and especially the ones |
| 12:27PM | 22 | that were contemporaneous with their failure, not the ones |
| 12:27PM | 23 | that were grafted within the last six months but the ones that |
| 12:27PM | 24 | were contemporaneous with their failure, explaining in terms |
| 12:27PM | 25 | of their own fault and nothing to do with us. |

| | | |
|---|---|---|
| 12:27PM | 1 | So the rest of the schedule that we propose is, they |
| 12:28PM | 2 | finish up on the cost discovery, they file their document, we |
| 12:28PM | 3 | quickly file something in response, we take whatever few |
| 12:28PM | 4 | depositions are necessary at that point. If experts are going |
| 12:28PM | 5 | to be permitted or if they think they're needed, it'll take a |
| 12:28PM | 6 | little adjustment, but we're going to get through with this. |
| 12:28PM | 7 | And while we're getting through with this, an important part |
| 12:28PM | 8 | of discovery in this case is also being completed in what I |
| 12:28PM | 9 | think is going to be in a very expeditious fashion. |
| 12:28PM | 10 | So what do we get at the end? 3 years have gone by. |
| 12:28PM | 11 | They're claiming they were denied customers, they won't tell |
| 12:28PM | 12 | us who the customers are, they won't tell us what we did, they |
| 12:28PM | 13 | won't tell us what portion of the U.S. Treasury Futures |
| 12:28PM | 14 | trading was kept away from them. All of that will be forced |
| 12:28PM | 15 | if we follow this procedure. |
| 12:28PM | 16 | The most interesting thing about John's explanation |
| 12:28PM | 17 | of the key word search that tells us that this is going to |
| 12:28PM | 18 | have a real result is that the 3 firms they name, Serrino |
| 12:29PM | 19 | Trading, Rand Financial and Nikko, were not even on their list |
| 12:29PM | 20 | of key words. None of the customers were on their proposed |
| 12:29PM | 21 | list of key words. If this is really your case, maybe I'm |
| 12:29PM | 22 | being stupid, maybe I'm falling into a trap, but when I see a |
| 12:29PM | 23 | list of key words that doesn't even go to the key issue that |
| 12:29PM | 24 | they've raised in the case and that they're using to get in |
| 12:29PM | 25 | the federal court and when I get interrogatory answers that |

```
12:29PM   1   don't answer the interrogatories, I feel I'm on a track that's
12:29PM   2   going to lead somewhere.
12:29PM   3           I want to tell you one more thing that's a background
12:30PM   4   fact that I think your Honor ought to know to really
12:30PM   5   understand what's going on here, and, again, why I think is
12:30PM   6   going to resolve the case.  Prior to the time that plaintiffs
12:30PM   7   came into the market, they had been the supplier of the
12:30PM   8   electronic system that the Board of Trade used to trade
12:30PM   9   treasury futures products.  Every treasury futures trader
12:30PM  10   trading at the Board of Trade was trading on their system.
12:30PM  11   Every treasury futures trader trading at the Board of Trade
12:30PM  12   was clearing its products through the clearing corporation,
12:30PM  13   TCC, Board of Trade Clearing Corporation.  The whole fight
12:30PM  14   here and their whole strategy of getting into this market was,
12:30PM  15   they had every trader that was of any importance connected to
12:30PM  16   their system, and trading on their system, and used to this
12:30PM  17   system, and they also had all those traders trading through
12:30PM  18   the clearing corporation.
12:30PM  19           They took over the clearing corporation.  They took
12:30PM  20   back the system.  The Board of Trade had to go out and buy a
12:31PM  21   new system, had to get a new clearing house, and had to make
12:31PM  22   sure that all the traders would use the new system and that
12:31PM  23   the system would interface properly with the clearing house.
12:31PM  24   This was a big risk.  They had a good chance.  The Board of
12:31PM  25   Trade succeeded, they failed.  But to come in here now and say
```

| | | |
|---|---|---|
| 12:31PM | 1 | that they were denied these traders, all of whom were already |
| 12:31PM | 2 | hooked to the system, is preposterous. And we think that if |
| 12:31PM | 3 | they're pushed into that posture by a summary judgment motion |
| 12:31PM | 4 | where they're going to have to respond with affidavits, it |
| 12:31PM | 5 | will be clearly apparent to the Court that they cannot do it. |
| 12:31PM | 6 | In the end, I think we can easily show that this is |
| 12:31PM | 7 | not an anti-trust case, your Honor. The output in the |
| 12:31PM | 8 | industry is up, the prices are down. USFE is still in the |
| 12:32PM | 9 | market. 80 percent of it was sold for -- 70 percent was sold |
| 12:32PM | 10 | for 23 million dollars, the new buyer put 35 million dollars |
| 12:32PM | 11 | in it. TCC, the clearing house, is still in the market. 3 |
| 12:32PM | 12 | new buyers came in and they're going to put a ton of business |
| 12:32PM | 13 | through TCC, they just announced it. So nobody has been taken |
| 12:32PM | 14 | out of the market, prices are down, output is up. This is not |
| 12:32PM | 15 | an anti-trust case in any sense of the word. |
| 12:32PM | 16 | I'm prepared to talk about why they actually failed, |
| 12:32PM | 17 | but I don't think that's relevant at this point. I think for |
| 12:32PM | 18 | our purposes we can structure a motion that's simple, that's |
| 12:32PM | 19 | not going to require a ton of discovery, and that's going to |
| 12:32PM | 20 | shape the future of the case. If we're wrong about this, it's |
| 12:32PM | 21 | going to change our attitude about what this case is about, |
| 12:32PM | 22 | your Honor. |
| 12:33PM | 23 | MR. QUINN: May I? |
| 12:33PM | 24 | THE COURT: You can, but I will make an offer to you. |
| 12:33PM | 25 | MR. QUINN: All right. |

| | | |
|---|---|---|
| 01:06PM | 1 | could just ask if we could get those so we can respond to the |
| 01:06PM | 2 | hearing. |
| 01:06PM | 3 |     MR. SALZMAN: Sure. There's just one, actually, |
| 01:06PM | 4 | demonstrative, the others -- |
| 01:06PM | 5 |     THE COURT: No, that's fine. That's fine. |
| 01:06PM | 6 |     MS. RENDER: Your Honor, may I ask, are you planning |
| 01:06PM | 7 | to discuss the CBOT second motion to comply with |
| 01:06PM | 8 | interrogatories in chambers? |
| 01:06PM | 9 |     THE COURT: Not now. |
| 01:06PM | 10 |     MR. QUINN: Your Honor, can we have 3? |
| 01:07PM | 11 |     THE COURT: 3 is fine. It's not going to take long. |
| 01:07PM | 12 | My clerk will bring you in in a minute. |
| 01:07PM | 13 | |
| | 14 |     *    *    *    *    *    *    *    * |
| | 15 | |
| | 16 | |
| | 17 | I, BLANCA I. LARA, DO CERTIFY THAT THE FOREGOING IS A CORRECT |
| | 18 | TRANSCRIPT FROM THE RECORD OF PROCEEDINGS IN THE |
| | 19 | ABOVE-ENTITLED MATTER. |
| | 20 | |
| | 21 | |
| | 22 | |
| | 23 | |
| | 24 | _[signature]_    1-28-07 |
| | 25 | Blanca I. Lara    Date |