# Exhibit G

```
 1                  IN THE UNITED STATES DISTRICT COURT
                       NORTHERN DISTRICT OF ILLINOIS
 2                           EASTERN DIVISION

 3   U.S. FUTURES EXCHANGE, L.L.C.,   )
     et al.,                          ) No. 04 CV 6756
 4                                    )
              Plaintiffs,             )
 5                                    )
     vs.                              ) Chicago, Illinois
 6                                    )
     BOARD OF TRADE OF THE            ) January 25, 2013
 7   CITY OF CHICAGO, INC., and       )
     CHICAGO MERCANTILE EXCHANGE, INC.,)
 8                                    )
              Defendants.             ) 10:24 o'clock a.m.
 9

10
                       TRANSCRIPT OF PROCEEDINGS
11                BEFORE THE HONORABLE JAMES B. ZAGEL

12
     For the Plaintiffs:
13
                    MORGAN, LEWIS & BOCKIUS, LLP
14                  BY:  William P. Quinn
                    1701 Market Street
15                  Philadelphia, Pennsylvania 19103
                    (215) 963-5775
16

17
     For the defendants:
18
                    SKADDEN ARPS SLATE MEAGHER & FLOM, LLP CH
19                  BY:  Albert Lee Hogan, III
                    155 North Wacker Drive
20                  Suite 2700
                    Chicago, Illinois 60606-1720
21                  (312) 407-0700

22

23        Court Reporter:
                    Blanca I. Lara, CRR, RPR
24                  219 South Dearborn Street
                         Room 2318
25                  Chicago, Illinois 60604
                       (312) 435-5895
```

|   |   |
|---|---|
|  | 1  (Proceedings taken in open court:) |
|  | 2  THE CLERK: 2004 C 6756, U.S. Futures, et al., versus |
|  | 3  the Board of Trade, et al. |
|  | 4  MR. HOGAN: Good morning, Judge. |
| 10:22:23 | 5  Al Hogan of Skadden, Arps for CME defendant. |
|  | 6  MR. QUINN: Good morning. |
|  | 7  Bill Quinn for plaintiffs. |
|  | 8  (Brief pause). |
|  | 9  THE COURT: The last time we were here we were |
| 10:22:52 | 10  discussing what you turned over to DOJ that might be |
|  | 11  producible. |
|  | 12  MR. HOGAN: Correct, Judge. Again, Al Hogan for the |
|  | 13  CME group. |
|  | 14  Maybe I can take a stab because I believe you're |
| 10:23:06 | 15  right. At the last hearing the burden was on us, I believe, to |
|  | 16  go and think about the DOJ production and to try to come up |
|  | 17  with a sample of that production for the Court's benefit, and |
|  | 18  because I believe the Court envisioned that in the disposition |
|  | 19  of the motion to compel and discovery going forward the Court |
| 10:23:25 | 20  wanted to have a sense for what that DOJ production looked |
|  | 21  like. |
|  | 22  If Your Honor has a few minutes, I guess a couple of |
|  | 23  things I would say first is that, I was here at the status |
|  | 24  hearing in December. There was a fair amount of discussion |
| 10:23:40 | 25  about what the purposes of the summary judgment motion were |

1  that Your Honor reviewed.
2      I filed my appearance in this case in the middle of
3  last year.  So I'm more of a bystand- -- I'm not a bystander,
4  I'm more of a historian about where the case has been in trying
5  to get up to speed in the case.
6      I noted in preparation for this hearing that when that
7  summary judgment process was initiated, Your Honor observed,
8  and actually committed to plaintiff, that the summary judgment
9  process would not end the case and that instead Your Honor had
10 designed to streamline the case to resolve some issues to
11 hopefully figure out what issues were still around and what the
12 methods of proof might be to further resolve the case.
13     So I thought that was interesting.  There was a lot of
14 discussion last time about whether it was a success or failure.
15 Your Honor envisioned that the case would actually continue
16 beyond the summary judgment exercise.
17     So at the status hearing we did talk about the DOJ
18 production, which has been, I believe, the parties' next focus
19 about how to move forward in the case.  And since that time,
20 we've gone out and attempted to learn what that DOJ production
21 is, we've attempted to come up with a sampling methodology to
22 educate Your Honor on what it is, and we believe we have a
23 proposal.
24     I have some slides.  I don't want to take up a ton of
25 time, but I have some slides that I'd love to hand up --

|  |  |
|---|---|
|  | 1 THE COURT: You're the last case on this morning's |
|  | 2 call. You can take all the time you think you need. |
|  | 3 MR. HOGAN: I saw that. Thank you, Judge. |
|  | 4 I have some slides. I have a copy for Mr. Quinn. And |
| 10:25:15 | 5 if I can hand those up, I think it will assist you in |
|  | 6 understanding what we believe we know and what would like to |
|  | 7 proceed with. |
|  | 8 Is one copy sufficient? |
|  | 9 THE COURT: Sure. |
| 10:25:29 | 10 (Document handed to Court and Counsel:) |
|  | 11 MR. HOGAN: So, Judge, what is the DOJ production? |
|  | 12 Slide 2 sort of gives us a sense for what we believe that |
|  | 13 production consists of. And the slide is entitled DOJ |
|  | 14 Electronic Production. I want to talk about that in a moment. |
| 10:25:43 | 15 But at the time of the DOJ production, CME and CBOT were |
|  | 16 obviously separate entities, that's the whole point. |
|  | 17 There were, roughly, 10 million pages of electronic |
|  | 18 documents produced, that's what this front slide says. And |
|  | 19 again, as a student of the history of this case and there's |
| 10:26:00 | 20 some things that I saw on the record that I think I need to |
|  | 21 make a comment on right now, and that is that in addition to |
|  | 22 these 10 million pages, roughly 10 million pages of documents, |
|  | 23 the CME produced approximately 370,000 pages of documents in |
|  | 24 purely paper form. CBOT produced approximately 150,000 pages |
| 10:26:23 | 25 in purely paper form. |

10:26:38

10:26:59

10:27:18

10:27:32

10:27:44

1  Now, what I need to make sure that we're clear -- and
2 that was referenced in some briefing, it was referenced in a
3 hearing in 2007.  The focus has been on the 10 million pages of
4 electronic documents.
5  As to the CME, 370,000 pages of electronic documents,
6 I want to be clear that those documents, as presented to the
7 DOJ, are not available in the sense that, the collective
8 version of those documents, there are not 370,000 pages of
9 paper documents sitting around for review in this case.  They
10 do not exist.  Those pages, as produced to the DOJ, those pages
11 are gone.
12  What we still believe we have are, obviously, the
13 10 million pages of electronic documents, and I believe we have
14 the 150,000 of CBOT paper production because those were, we
15 believe, reduced to electronic form.  But just to be completely
16 clear about the record, 370,000 pages of paper documents, we
17 cannot access those in the form that they were produced to the
18 DOJ.
19  So that's the overview --
20  THE COURT:  Stop, stop for a second.  You said cannot
21 reproduce in the form that they were produced to DOJ.
22  MR. HOGAN:  Correct.
23  THE COURT:  They can be produced in some other form?
24  MR. HOGAN:  Correct.  And two things on that appoint.
25 First of all, in this case, one of the things that the parties

| | |
|---|---|
| | 1 were able to accomplish was, I believe, a comprehensive paper |
| | 2 production was executed for this case in the middle of 2006. |
| | 3 So the parties had agreed on what the scope of discovery would |
| | 4 be, more or less, and I believe both parties went and pulled |
| 10:28:02 | 5 the paper documents that were responsive in this case, that |
| | 6 production has already been completed. |
| | 7 The second thing is, you're right, the language I used |
| | 8 was very precise. What happened was, 370,000 pages were |
| | 9 gathered, put in boxes and sent to the DOJ. We don't have |
| 10:28:21 | 10 those, but we have no reason to believe that the documents |
| | 11 weren't already produced for the Urex litigation. Those |
| | 12 documents that might still exist at CME, you know, don't cover |
| | 13 the entire universe, but I need to state that to be very clear |
| | 14 about what the DOJ production was and what we still have |
| 10:28:39 | 15 access to. |
| | 16 So with that, Judge, the next slide, Slide 3, tries to |
| | 17 give a sense, a little more detail, about what is contained in |
| | 18 the CME electronic production. The next slide does the same |
| | 19 thing with respect to the CBOT production. |
| 10:28:59 | 20 So I do just want to tick down a little bit because |
| | 21 there are some relevant data points here. As for CME, there |
| | 22 were 58 custodians who provided documents to the DOJ. 25 of |
| | 23 those custodians overlap with custodians who have been |
| | 24 identified, at this point, as potentially possessing responsive |
| 10:29:24 | 25 documents in the Urex case. So there's some overlap but it's |

| | | |
|---|---|---|
| | 1 | not a perfect overlap. |
| | 2 | The data in terms of the number of documents, that is |
| | 3 | what it is. Dropping down to this number of hard drives |
| | 4 | produced, 22, and CD ROMs produced, 6, the thing to understand |
| 10:29:43 | 5 | about that is that the production was organized by custodian, |
| | 6 | but as to any one custodian, that custodian's documents may |
| | 7 | appear across multiple drives. |
| | 8 | So, again, stated in a negative, this was a response |
| | 9 | to a DOJ request--and we'll talk about that request--the |
| 10:30:03 | 10 | documents are not organized, as far as I can tell, in any |
| | 11 | fashion as responsive to the specific DOJ requests. It is a |
| | 12 | custodian-driven production. Having said that, the custodian |
| | 13 | documents are spread across multiple drives to, more or less, |
| | 14 | extend depending on the custodian. So that is the nature of |
| 10:30:25 | 15 | the CME production. |
| | 16 | If you look at the next page, that's Slide 4, that is |
| | 17 | also my understanding of the way the CBOT production was |
| | 18 | executed, again not by responsiveness to a DOJ request but by |
| | 19 | custodian. There were 55 custodians that participated in the |
| 10:30:48 | 20 | DOJ response, 22 of those overlap with the Urex identified |
| | 21 | custodians, 21 hard drives for CBOT. |
| | 22 | Another aspect of this production, and you'll see it |
| | 23 | on both of these slides, we talk about shared drives. And so |
| | 24 | roughly half of the documents produced to the DOJ--someone will |
| 10:31:14 | 25 | yell at me if I get that wrong--roughly half of the documents |

38

1
2
3      *  *     *     *     *     *     *     *
4
5
6   I CERTIFY THAT THE FOREGOING IS A CORRECT TRANSCRIPT FROM THE
7           RECORD OF PROCEEDINGS IN THE ABOVE-ENTITLED MATTER
8
9
10   /s/Blanca I. Lara                         date
11
12
13
14
15   _____        _____
16           Blanca I. Lara                    Date
17
18
19
20
21
22
23
24
25