# Exhibit H

```
                                                                  1

 1            THE UNITED STATES DISTRICT COURT.
              NORTHERN DISTRICT OF ILLINOIS
 2                   EASTERN DIVISION

 3  U.S. FUTURES EXCHANGE, L.L.C.,    )
                                      )
 4  et al.,                           ) No. 04 CV 6756
                                      )
 5         Plaintiffs,                )
                                      )
 6  vs.                               ) Chicago, Illinois
                                      )
 7  BOARD OF TRADE OF THE             )
    CITY OF CHICAGO, et al.,          ) August 7, 2012
 8                                    )
           Defendants.                ) 10:31 o'clock a.m.
 9

10              TRANSCRIPT OF PROCEEDINGS
          BEFORE THE HONORABLE JAMES B. ZAGEL
11

12  For the Plaintiffs:

13          MORGAN, LEWIS & BOCKINS
            BY:  William P. Quinn
14          1111 Pennsylvania Avenue, NW
            Washington D.C. 20004
15
            Morgan Lewis & Bockius LLP
16          BY:  Romeo S. Quinto
            77 West Wacker Drive
17          Chicago, Illinois 60601
            (312) 324-1780
18

19

20  Court Reporter:
              Blanca I. Lara, CRR, RPR
21            219 South Dearborn Street
                    Room 2318
22             Chicago, Illinois 60604
                  (312) 435-5895
23

24

25
```

1  Appearances (continued:)
2
3  For the defendants:
4
5              FREEMAN, FREEMAN & SALZMAN, P.C.
               BY: Jerrold E. Salzman
               401 North Michigan Avenue
6              Suite 3200
               Chicago, Illinois  60611
7
8              SKADDEN ARPS SLATE MEAGHER & FLOM, LLP CH
               BY:  Jason T. Manning
9                   Albert Lee Hogan, III
               155 North Wacker Drive
10             Suite 2700
               Chicago, Illinois 60606-1720
11             (312) 407-0700
12
13
14
15
16
17
18
19
20
21
22
23
24
25

1  purpose for doing it regardless of whether or not it
2  hurt them.  We think their experts have already
3  admitted it, but if they have some discovery in
4  addition on that, we'll be happy to work on that and
5  deal with them and get it done.
6        Instead of anything focused--and we didn't
7  have a discussion, unfortunately, beforehand--we got
8  a proposal of sort of a blank standard discovery
9  schedule that's relatively arbitrary and not
10 connected to anything that anybody could possibly
11 need in order to decide those two issues which are
12 the main two issues in the case.
13        We would suggest, obviously, that we focus on
14 those issues.  We discuss what they actually need,
15 what searches they need, what are legitimate, what
16 depositions they need, when they want them, and get
17 it done.
18        MR. QUINN:  Your Honor, I will not paraphrase
19 the Court's opinion.  I will say that we take away
20 from it something apparently fundamentally different
21 from what Mr. Saltzman is suggesting.  He appears
22 from his remarks to think that the Court's ruling
23 narrows the scope of relevant discovery to a far
24 greater degree than we think is fair.
25        This is not simply a case about whether a

1  particular trader was threatened or intimidated,
2  therefore isn't a case in which the only thing that
3  would be relevant would be a document that would
4  embody such a threat.  We allege in this case that
5  there was a conspiracy between the then two separate
6  entities to stop Urex from establishing a foothold
7  in the U.S. market.  There are multiple facets to
8  that conspiracy, but it is one over-arching strategy
9  that is interrelated.
10          The fact that the Court has taken out of the
11  case, at least as a basis for the antitrust
12  liability, the proceedings before the CFTC does not
13  mean that discovery is narrowly focused as
14  Mr. Saltzman suggested.
15          The defendants maintain that we have an
16  obligation to show that there was in fact a
17  conspiracy and that the actions that the defendants
18  took, the Court says are in the case, were motivated
19  by an anticompetitive intent.  That places directly
20  in issue the very same documents that we sought
21  unsuccessfully before the summary judgement motion
22  was filed.
23          The Court asked us to come here today with a
24  plan for moving things forward.  We have three
25  proposals:

1    The first is that the Court enter a
2 scheduling order. We prepared a proposal that I'd
3 like to hand up, if I may.
4    (Handing document).
5    MR. QUINN: That proposal establishes
6 deadlines for the various proceedings that have to
7 take place before this case can be tried and it goes
8 all the way up through the suggested date of a final
9 pretrial conference. We think that this is a
10 schedule that strikes the right balance between
11 allowing the parties to do what needs to be done,
12 but establishing deadlines that are sufficiently
13 aggressive to ensure that there are no further
14 delays in getting this case tried.
15    The second proposal that we have is that the
16 Court grant our pending motion to compel the
17 defendants to produce the documents that they
18 produced to the Department of Justice pursuant to
19 civil investigative demands that were issued in
20 connection with the DOJ's merger investigation.
21    That issue has been briefed already, it's
22 been argued already. We believe that, particularly
23 in light of the Court's decision on summary
24 judgment, it's a no-brainer that they be required to
25 turn over those CD's. They have them. There is no

:36AM (lines 5, 10)
:37AM (lines 15, 20, 25)

1  meaningful expense, the burden associated with
2  producing them.  They have already conceded that all
3  or substantially all of the documents that they had
4  agreed years ago are relevant in this case are
5  contained within that production.  Those documents
6  are not privileged, by definition, because they were
7  disclosed to a third party, and they are not covered
8  by the statutory privilege that would apply if we
9  were seeking documents directly from the government
10 rather than from the defendants.
11         So we would propose that the Court grant that
12 motion, require them to turn over those documents
13 immediately, which we believe would get us 90
14 percent of the way we need to be to complete
15 document discovery.
16         And then the third thing we would propose is
17 that the Court appoint a discovery master, for the
18 reason that history of this case has shown that the
19 parties have great difficulty finding common ground
20 on anything, discovery in particular.  And because
21 we anticipate that there will be probably more
22 disputes than we would prefer over discovery, that
23 in order to maintain this case on the right track, a
24 third-party be appointed in order to promptly
25 consider and resolve any discovery disputes that

1 arise between the parties.
2     MR. SALTZMAN:  It would've been good to meet
3 and confer this beforehand so that we could actually
4 form a position, but --
5     THE COURT:  You are going to meet and confer
6 before I see you next, but --
7     MR. SALTZMAN:  I think that would be the
8 appropriate way to do it.
9     With respect to this notion that there's a
10 conspiracy without a particular point of impact, I
11 don't believe that's the law in this circuit or in
12 the Supreme Court.
13     Effectively, a conspiracy is an illegal
14 agreement, an agreement to do something prohibited
15 by the law, and, in this case, we would have had to
16 do it.  The only thing they've alleged that remained
17 in the complaint is that we intimidated traders and
18 that the Board of Trade transferred its open
19 interest to the CME clearing house in order to fork
20 their entrance into the market.  Seventh Circuit
21 authority on refusing to deal with a competitor or
22 on the question of essential facilities is
23 absolutely clear, and as long as the Board of Trade
24 had a legitimate reason, business reason, to do both
25 acts, we're in the clear.  And in this case, their

```
 1
 2            *    *    *    *    *    *    *    *
 3
 4
 5  I CERTIFY THAT THE FOREGOING IS A CORRECT TRANSCRIPT
 6  FROM THE RECORD OF PROCEEDINGS IN THE ABOVE-ENTITLED
 7                           MATTER
 8
 9
10     /s/Blanca I. Lara                         date
11
12
13
14
15   _____     _____
16          Blanca I. Lara                      Date
17
18
19
20
21
22
23
24
25
```