UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| U.S. FUTURES EXCHANGE, LLC and U.S. EXCHANGE HOLDINGS, INC., | |
| Plaintiff, | No. 04 C 6756 |
| v. | Judge Thomas M. Durkin |
| BOARD OF TRADE OF THE CITY OF CHICAGO and CHICAGO MERCANTILE EXCHANGE, INC., | |
| Defendants. | |

## MEMORANDUM OPINION AND ORDER

The Court granted summary judgment to Defendants and that judgment was affirmed on appeal. Defendants now seek costs in the amount of $307,033.40. R. 765. The Court grants that award in full plus interest of $29,483.62.

## Analysis

Plaintiffs oppose $217,033.40 of the costs Defendants seek, broken down into the following five categories: (1) $140,602.80 in costs for electronically stored information ("ESI") processing and electronic document production; (2) $1792.50 in costs for court reporter exhibit copies; (3) $38,691.75 in costs for deposition video recordings; (4) $10,328.70 in costs sought without receipt or invoice of charges; and (5) $26,444.00 in costs for real time feeds and rough drafts of deposition transcripts.

**I.     ESI Processing and Electronic Document Production**

Plaintiffs object to Defendants' request for $140,602.80 in costs for ESI processing and electronic document production. Of that amount, $126,926.49 was for the reproduction of documents in 2014 that the Defendants originally produced to the Department of Justice in 2007; and $13,676.30 was for processing and preparing their production of documents in 2017. Plaintiffs argue both that these costs: (a) are not taxable and (b) were not necessary.

**A.     Taxable Copies**

Plaintiffs contend that the costs for Defendants' "production in 2014 and 2017 consist of (1) applying Optical Character Recognition ("OCR") software to documents in order to make them text searchable, (2) conversion of digital native files into readable formats (TIFF or PDF), and (3) bates stamping the digital files." R. 809 at 3. Plaintiffs argue that "costs associated with preparing ESI for production, such as applying OCR, are not taxable." *Id.* at 3-4 (citing *Life Plans, Inc. v. Sec. Life of Denver Ins. Co.*, 52 F. Supp. 3d 893, 902 (N.D. Ill. 2014)).

Federal law permits taxing as costs "fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case." 28 U.S.C. § 1920(4). Traditionally, courts have interpreted "exemplification" and "making copies" with reference to the cost of making photocopies of paper documents. *See, e.g.*, *Rawal v. United Air Lines, Inc.*, 2012 WL 581146, at *2 (N.D. Ill. Feb. 22, 2012) ("Costs may be awarded under § 1920(4) for electronically scanning and processing documents because the electronic scanning of

2

documents is the modern-day equivalent of exemplification and copies of paper."). In other words, costs that are not analogous to photocopies are not recoverable. *See, e.g.*, *Bagwe v. Sedgwick Claims Mgmt. Servs., Inc.*, 2015 WL 351244, at *6 (N.D. Ill. Jan. 27, 2015) ("e-discovery costs are recoverable only when they are clear analogues of copying costs").

Plaintiffs cite a case from this district holding that "preparing ESI for conversion into a readable file format" does not constitute "exemplification" or "making copies" for purposes of § 1920. *See* R. 809 at 4 (citing *Life Plans*, 52 F. Supp. 3d at 902). But the Seventh Circuit has explained that the costs "for converting computer data into a readable format . . . are recoverable." *Hecker v. Deere & Co.*, 556 F.3d 575, 591 (7th Cir. 2009). And courts in this district frequently award costs for conversion of hard copies or native files into electronic format. *See Motorola Sols., Inc. v. Hytera Commc'ns Corp. Ltd.*, 2021 WL 3489813, at *13-14 (N.D. Ill. Aug. 6, 2021) (citing cases); *see also The Medicines Co. v. Mylan Inc.*, 2017 WL 4882379, at *9 (N.D. Ill. Oct. 30, 2017) (courts in this district "have concluded that ESI discovery costs associated with the conversion of ESI into a readable format, such as scanning or otherwise converting a paper version to an electronic version or converting native files to TIFF . . . are compensable under § 1920(4)" (citing cases)).

Some courts have distinguished between the costs for format conversion on the one hand and OCR application on the other, finding that the former is compensable while the latter is not. *See Motorola*, 2021 WL 3489813, at *13-14 (citing cases). The courts that decline to award OCR costs do so because documents are "readable" upon

3

conversion to the proper electronic format, whereas OCR is an added process to make those readable documents word-searchable. *Id.*

OCR application is not analogous to making a photocopy of a paper document. That is why some courts disallow such costs. But parties generally expect electronic document productions to be word-searchable. Being word-searchable is a benefit of electronic documents and is one of the reasons electronic documents are produced in databases rather than by printing hard copies. As other courts have observed, being word-searchable is a "fundamental" characteristic of an electronic "copy." *Motorola*, 2021 WL 3489813, at *12; *Intercontinental Great Brands LLC v. Kellogg N. Am. Co.*, No. 13 C 321, 2016 WL 316865, at *6 (N.D. Ill. Jan. 26, 2016); *The Medicines*, 2017 WL 4882379, at *10. For this reason, this Court agrees that costs of OCR application are taxable under § 1920(4).

Separately, Plaintiffs argue that Defendants' ESI vendor's "statement of work" showing the costs of the production broadly states the price of a "Standard Production," and so could include costs of production—such as loading, processing, and storage—that are not recoverable under § 1920(4). *See* R. 809 at 5. Defendants, however, have presented affidavits from their vendor stating the charges for format conversion and OCR. *See* R. 810-1. This documentation is a sufficient basis for the Court to award costs.

### B. Necessary Copies

Plaintiffs argue that even if the Court finds that the ESI processing for which Defendants' seek reimbursement constitute "copies" under § 1920(4), those copies are

4

only taxable if they are "necessarily obtained for use in the case." 28 U.S.C. § 1920(4). "The district court has discretion to determine which copies were necessary." *Montanez v. Simon,* 755 F.3d 547, 558 (7th Cir. 2014).

Plaintiffs argue that the costs of the 2014 production were unnecessary because Defendants had already produced the documents to the Department of Justice and "Plaintiffs offered to take a straight reproduction of the DOJ Documents" without "any additional processing." *See* R. 809 at 6. Plaintiffs also argue that some of the costs of the 2017 production were unnecessary because they "were also potentially duplicative of work done in connection with the DOJ documents." *Id.* at 7.

Plaintiffs' argument is premised on the contention that the Court ordered Defendants to make a document production in this case that was identical to what was produced to the DOJ. But Defendants were required to produce only a subset of the DOJ documents. The Court narrowed the time period of documents to be produced. *See* R. 536-33 at 16-17. Defendants re-processed the documents in order to create this sub-set. Further, the "original media" used to make the production to the DOJ needed to be re-processed for production in this case because certain files and CD-ROMs from the original DOJ production were corrupted, *see* R. 503-3 at 3, and some hard copy documents were destroyed by the DOJ rather than being returned, *see* R. 506 at 5-6. For these reasons, it was not possible to simply provide a "straight reproduction of the DOJ documents" as Plaintiffs allegedly requested. Thus, the conversion costs of the DOJ documents were necessary and taxable.

5

## II. Court Reporter Copy of Exhibits

Defendants seek $1792.50 in costs for court reporter exhibit copies. Some courts deny such costs "unless the costs are essential to understanding an issue in the case." *Fait v. Hummel*, 2002 WL 31433424, at *2 (N.D. Ill. Oct. 30, 2002); *Donald v. Portillo's Hot Dogs, Inc.*, 2014 WL 1646954, at *1 (N.D. Ill. Apr. 24, 2014). Other courts recognize that, even absent necessity for a particular issue, "because documents are usually referred to in depositions by their assigned exhibit numbers, litigants need to use the exhibit-stamped version of a document in order to benefit from a witness's deposition testimony about the document." *GC2 Inc. v. Int'l Game Tech.*, 2019 WL 3410223, at *5 (N.D. Ill. July 29, 2019); *Hillmann v. City of Chicago*, 2017 WL 3521098, at *3 (N.D. Ill. Aug. 16, 2017). It is also possible that "the deponent, attorney, or both marked on the exhibit during the deposition, making the deposition copy unique." *In re Dairy Farmers of Am., Inc.*, 80 F. Supp. 3d 838, 856 (N.D. Ill. 2015). For these reasons, the Court awards the cost of deposition exhibit copies.

## III. Deposition Video Recordings

Defendants seek $38,691.75 in costs for deposition video recordings. Plaintiffs argue that these costs were unnecessary and unreasonable because the videos were duplicative of transcripts and all of the deponents were going to be available to testify at trial.

The Seventh Circuit has held, however, that if a deposition is video-recorded, Rule 54(d) permits an award of costs "of both video-recording and stenographic

transcription to be taxed to the losing party." *Little v. Mitsubishi Motors N. Am., Inc.*, 514 F.3d 699, 702 (7th Cir. 2008). Furthermore, the deposition protocol entered as an order in this case contemplated that depositions would be video recorded. *See* R. 656 at 11. For these reasons, the Court awards the costs of deposition video recordings.

## IV.     Costs Without Receipts

Plaintiffs object to $10,328.70 in costs sought without receipt or invoice. But 28 U.S.C. § 1924 does not require receipts or invoices. The statute requires only "an affidavit, made [by the party seeking costs] or by his duly authorized attorney or agent having knowledge of the facts, that such item is correct and has been necessarily incurred in the case and that the services for which fees have been charged were actually and necessarily performed." *Id.* The Seventh Circuit has confirmed that "[n]o statute or rule requires more." *Nat'l Org. for Women, Inc. v. Scheidler*, 750 F.3d 696, 698 (7th Cir. 2014). And Plaintiffs' own authorities find that courts do not require receipts or invoices, but simply "evidence" to support a bill of costs. *See* R. 809 at 10 (citing *Druckzentrum Harry Jung GmbH & Co. KG v. Motorola, Inc.*, 2013 WL 147014, at *5 (N.D. Ill. Jan. 11, 2013)).

Defendants seeks costs for 19 hearing transcripts for which they lack invoices. But Defendants have the transcripts and know what the court reporter charges. Counsel's affidavit attests to the accuracy of this request. *See* R. 765-1 ¶¶ 11. This is sufficient evidence to justify and award of costs.

Similarly, Defendants lack invoices for copies made for witness preparation and deposition exhibits. But Defendants retained the copies and know the cost of the

7

copies. Again, counsel attests to the accuracy of this request. *See* R. 765-1 ¶¶ 28-30. This is sufficient evidence to justify an award of these costs.

## V.     Deposition Real Time Feeds and Rough Drafts

Plaintiffs oppose Defendants' request for $26,444.00 in costs for real time feeds and rough drafts of deposition transcripts, arguing that real time feeds and rough drafts were "purely for counsel's convenience." R. 809 at 12. But the deposition protocol ordered in this case provides that "the noticing Party shall make arrangements so that a . . . real-time video and text feed are available during the deposition." R. 656 at 11. This is not surprising as it is common practice in high-stakes litigation like this case. *See In re Dairy Farmers*, 80 F. Supp. 3d at 855-56 ("While Realtime (or LiveNote) service may be a convenience, it is a convenience that is becoming ubiquitous in the modern legal world."). Furthermore, as is recounted in Defendants' brief, the deposition and summary judgment briefing schedule in this case was compressed and accelerated. *See* R. 810 at 8-9. The Court presumes that Plaintiffs benefited from the real-time feeds and used the rough transcripts to prepare their briefs. This belies Plaintiffs' argument that such costs were unnecessary or unreasonable. Therefore, the Court awards the requested costs.

**Conclusion**

Therefore, Defendants' bill of costs [765] for $307,033.40 is granted, plus interest of $29,483.62,[1] for a total award of $336,517.02.

ENTERED:

*Thomas M Durkin*

Honorable Thomas M. Durkin
United States District Judge

Dated: January 6, 2022

---

[1] The Court previously held that it would include interest in any award of costs. *See* R. 796 at 3. The Court awards the interest amount calculated by Defendants' counsel by compounding the total requested amount by 4.42%, the average prime rate in effect between December 3, 2018 and January 15, 2021 (the day Plaintiffs filed their opposition to the bill of costs), annually over 2.12 years. *See* St. Louis Fed., Historical Prime Loan Rates, *available at* https://fred.stlouisfed.org/series/PRIME; *First Nat. Bank of Chi. v. Standard Bank & Tr.,* 172 F.3d 472, 481 (7th Cir. 1999) (average prime rate applies absent statutory rate). Interest is not awarded for the time it took the Court to rule.